UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRADLEY MARSH,
    Plaintiff,

        v.                         CIVIL ACTION. NO.
                                      15-13061-MBB
UNITED STATES OF AMERICA,
    Defendant.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**June 19, 2017**

**BOWLER, U.S.M.J.**

This case arises out of a fall plaintiff Bradley Marsh ("plaintiff") suffered the morning of February 12, 2013 while trying to mail a letter outside a United States post office in Hanson, Massachusetts. Plaintiff seeks recovery from the United States ("the government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, on the basis that the government did not exercise reasonable care to prevent an accumulation of snow and ice on a walkway at the post office.[1] In response to the one-count complaint of negligence, the government's answer sets out that it sufficiently met its duty to provide a reasonable standard of care in maintaining the

---

[1] At the outset of the trial on November 28, 2016 and in response to the government's amended pretrial memorandum asserting a jurisdictional argument based on discretionary function, plaintiff stated that he is not asserting a negligent hiring claim. Rather, this action is a pure negligence case.

walkways.

In addition to plaintiff, the following witnesses testified at a bench trial before this court: Auberon Moustakes ("Moustakes"), an 18 year old high school student at the time; Karen McGill ("McGill"), the officer in charge at the post office in February 2013; and Michael W. McCue ("McCue"), the town administrator in the Town of Hanson.

## FACTUAL FINDINGS

The accident occurred at the Monponsett Post Office in Hanson, Massachusetts. The parties agree that the post office is "located at 935 Monponsett Street" in Hanson and "controlled by the United States Postal Service." (Docket Entry ## 24, 31, ¶¶ 2). They also agree that, "On or about February 12, 2013," the property located at this address "was owned and/or otherwise controlled by United States of America" and that the "United States of America was operating a Post Office" on the property. (Docket Entry ## 24, 31, ¶¶ 2). The remaining facts are disputed. This court finds the following facts.

The Monponsett Post Office is a rural post office that does not provide delivery services. It serves a small community and the building itself resembles a small, one story house. The post office has post office boxes and provides retail services such as providing postage and weighing packages. Separate and apart from Moustakes and Gordan Andrews ("Andrews"), who plowed the

2

facility's two parking lots, McGill was the only employee at the facility. As the officer in charge, she was responsible for sorting mail, operating the retail counter, tracking and ordering inventory as well as snow and ice removal. More specifically, she was responsible for clearing snow and ice from the walkway where plaintiff fell at approximately 6:15 a.m. on Tuesday, February 12, 2013. McGill was trained in keeping the area clear and, having worked at the Monponsett Post Office since 2000, was familiar with operations at the facility.

The post office was open from 8:00 a.m. to 5:30 p.m. Monday through Friday and from 9:00 a.m. to 12:30 p.m. on Saturdays. The Hallifax Post Office, another post office in the area, was a short distance away and had a mailbox which allowed customers to drop off mail without leaving their cars. Another post office near where plaintiff works had a mailbox under an overhang and protected from the elements.

In February 2013, the Monponsett Post Office had three walkways and two parking lots. One walkway led to a back parking lot. Each of the other two walkways allowed patrons to access a large blue carrier collection box in front of the post office. The two walkways formed a loop from the front door to the collection box and to the side parking lot.

From February 8 to 9, 2013, there was a blizzard which left more than 20 inches of snow on the ground outside the post

3

office.  The blizzard was so severe that a state of emergency was declared in the area and the post office was closed on Saturday, February 9, 2013.  When McGill arrived at work at 8:00 a.m. on Monday, February 11, 2013 the post office was without power.  It had no heat, no lights, no electricity, no computer service, and no landline telephone service.  The power outage remained throughout the day on February 11, 2013.

Moustakes, an 18 year old high school student at the time, shoveled and cleared snow at the post office during the winter of 2013.  Each time he cleared the ice and shoveled the snow, the post office paid him $25.  He shoveled the paths on all of the walkways to the post office twice on February 8, 2013 and five separate times on February 10 and 11, 2013.  Each time he undertook the task, he laid salt and sand on all of the walkways.  On February 11, 2013, he shoveled, sanded, and salted all of the walkways before the post office opened.  He did not return to shovel the walkways later in the day or evening.

McGill arrived for work at around 8:00 a.m. on February 11, 2013, parked in the back parking lot, entered the building, put down her things, and opened the front door.  As was her practice, she then walked all of the walkways.  The walkways were all level to the ground, sanded, salted and safe to walk.  Moustakes had done an "excellent job," according to McGill, and she convincingly testified about her excitement that she "did not

4

have to shovel."

Only a "very few" customers and "a lot less" than usual came to the post office that day. McGill spent most of the day outside both to keep warm and to make sure the walkways were safe. She walked the walkways "many times" both to "keep busy" and to keep the walkways safe. The post office had a barrel of sand and salt mixture with a scoop to distribute the mixture along the walkways. As was her standard procedure, McGill repeatedly spread the sand and salt mixture along the walkways throughout the day to keep the walkways refreshed. When McGill closed the post office for the day at 5:30 p.m., she testified that the walkways were in "the same" condition. She described them as "clear," "level to the ground," covered with "a lot of sand and salt," and "safe to walk on."

During the evening of February 11, there was no additional precipitation. At around 6:15 a.m. on February 12, plaintiff drove to the post office, parked his car, and exited out into the parking lot to mail a letter. As the sun had not yet risen and there were no lights due to the power outage, plaintiff struggled to see the condition of the ground. Plaintiff was not wearing snow boots and felt that the ground was slippery. As he continued to walk on a shoveled, cleared, and well-salted walkway toward a large blue, carrier collection box, he fell on his right side on the walkway. MRI results show he suffered tears to his

5

right rotator cuff and biceps. He did not report the fall until two weeks later on February 25, when he returned to the post office and informed the postmistress of the fall.

## CONCLUSIONS OF LAW

By enacting the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 and 2671 et seq., Congress expressly "waived the government's sovereign immunity with respect to private tort actions." Roman-Cancel v. United States, 613 F.3d 37, 41 (1st Cir. 2010); Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000) (FTCA waives "the sovereign immunity of the United States with respect to tort claims"); 28 U.S.C. § 2674. The Postal Reorganization Act, 39 U.S.C. §§ 101 et seq., also instructs that the FTCA "shall apply to tort claims arising out of activities of the Postal Service." 39 U.S.C. § 409(c). The FTCA therefore governs the liability of the government in this case.

In determining liability, the FTCA mandates application of "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); Calderon-Ortega v. U.S., 753 F.3d 250, 252 (1st Cir. 2014). Massachusetts negligence law therefore applies.

In order to impose liability for negligence, "there must first be a legal duty owed by the defendant to the plaintiff, and a breach of that duty proximately resulting in the injury." Dos Santos v. Coleta, 987 N.E.2d 1187, 1192 (Mass. 2013). With respect to the duty of a property owner for hazards arising from

snow and ice, the property owner "owes to lawful visitors . . . a duty to 'act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk,'" as well as "the amount of foot traffic to be anticipated on the property." Papadopoulos v. Target Corp., 930 N.E.2d 142, 154 (Mass. 2010) (quoting Mounsey v. Ellard 297 N.E.2d 43, 52 (Mass. 1973)). To establish negligence, a plaintiff must show that a defendant either placed the snow or ice hazard where the accident occurred, knew of the existence of the snow or ice hazard, or should have known about the hazard because it was present "for such a length of time." Oliveri v. Massachusetts Bay Transportation Authority, 292 N.E.2d 863, 864-865 (Mass. 1973). The reasonableness of a given length of time largely "depends on the opportunity for discovery open to the defendant's employees by reason of their number, their physical proximity to the condition in question, and, in general, the likelihood that they would become aware of the condition in the normal performance of their duties." Id.

The government more than sufficiently satisfied its duty to lawful visitors to act as a reasonable person under the circumstances. McGill maintained the walkways in a reasonably safe condition under the circumstances. When she left the post office at 5:30 p.m. on February 11, the walkway at issue was

7

cleared of ice and was not slippery. Given the very few patrons throughout the day, it was reasonably anticipated that foot traffic would be very light between the time McGill closed the post office at 5:30 p.m. on February 11 and reopened the facility at 8:00 a.m. the next morning. The likelihood of a slip and fall injury on the walkways was relatively remote because the paths were clear, sanded, and not slippery as of 5:30 p.m. on February 11 and the weather forecast was clear. McGill, who personally inspected the walkway at issue, had no knowledge of a slippery or unsafe condition on the walkway. Because the walkways were clear and in good condition when McGill left at 5:30 p.m., there was no reason for her to contact Moustakes to clear them and very little risk that they would not remain clear through the night. In fact, when McGill arrived the next morning, the walkways had remained in the same, good condition.

The government met the required standard of care owed to plaintiff. McGill and Moustakes both shoveled and spread sand and salt multiple times both during the storm and in the days between the storm's end and plaintiff's fall, including repeatedly on the day before plaintiff fell, just as "an added precaution," as stated by McGill. McGill spent much of that day walking the walkways and testified that they were level and safe when she arrived that morning, when she left that night, and when she returned the following morning. It was reasonably

anticipated that there would be little foot traffic during the hours the post office was closed. Because there was no additional precipitation forecast between the time McGill left on February 11 and when plaintiff fell the next morning, there was no foreseeable reason why the walkways would not remain in the same safe condition and thus only a very small likelihood of injury.

Furthermore, even if conditions on the walkways had changed during the night while the office was closed, the government is not required to keep its premises completely dry and clear, but only reasonably clear and safe. See Athas v. United States 904 F.2d 79, 83 (1st Cir. 1990) (because of natural weather conditions, post office was not required to keep grounds completely dry). "In this climate . . . a number of conditions might exist which within a very short time could cause the formation of ice . . . without fault of the owner and without reasonable opportunity on his part to remove it or warn against it or even to ascertain its presence." Barry v. Beverly Enterprises-Massachusetts, Inc., 626 N.E.2d 26, 29 (Mass. 1994).

There is insufficient evidence that the government either knew of unsafe conditions or should have known because a reasonable length of time had passed. It would be unreasonable to expect the Monponsett Post Office, an office with a single employee, few customers, and limited services, to maintain

perfect conditions at all hours of the night following a blizzard.  McGill's repeated efforts shoveling, sanding, salting, and monitoring the walkways during business hours satisfied the reasonable level of care owed to plaintiff.  In sum, the government did not breach any duty owed to plaintiff that proximately resulted in the injury he claims he suffered on the morning of February 12.

Because this court finds that the government was not negligent in its duty, it is not necessary to address whether Moustakes was an employee or an independant contractor. Similarly, this court need not address the government's comparative negligence defense.

## CONCLUSION

In accordance with the foregoing discussion, the negligence claim lacks merit and plaintiff is not entitled to relief.  A final judgment will therefore enter in favor of the government.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge